The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James Kinect presiding. We have case number 418-0138, People of the State of Illinois v. Robert Ware. Would counsel for appellant please state your name for the record? My name is Christopher Kopasz. And would counsel for appellee please state your name for the record? David Mansham. You may proceed. Thank you. Good morning, your honors. May it please the court. Again, my name is Christopher Kopasz on behalf of the appellant, Robert Ware. Robert Ware was charged with aggravated battery by strangulation of a fellow inmate, Donald Phillips, at the Woodford County Jail. At his jury trial, Mr. Ware testified that he was acting in self-defense after Phillips tried to strike him in the face with a dirty toilet brush. Yet the trial court denied the defense request to instruct the jury on self-defense based on the court's misapprehension of the law. Reasoning that Ware could not argue self-defense when he had denied on the witness stand that he had strangled the complainant. The court's reasoning is wrong for two reasons. First, it fails to apply the broad statutory definition of strangulation in the criminal code, which differs significantly from the word's ordinary meaning, and which was easily satisfied by Ware's testimony. Any fair reading of Ware's testimony in this case. And second, the court incorrectly applied case law, stating that a self-defense instruction is inappropriate where the defendant has denied using force. Because clearly here, Ware did admit to using force against Phillips. The evidence at trial, including Ware's own testimony, is fairly clear about what happened. When a fight broke out, Ware was able to get on top of Phillips, and he put his arm around Phillips' neck. He applied pressure to Phillips' neck, and he kept, remained in that position on top of Phillips on the ground for several minutes. And that's what Ware and Phillips each testified to. And that meets the statutory definition of strangulation, which in relevant part is, quote, intentionally impeding the normal breathing of an individual by applying pressure on the throat or neck of that individual. Ware was consistent throughout his testimony that he put his arm around Phillips' neck and at various points applied pressure. He testified, quote, every time he tried to fight, I put pressure on his neck. Quote, I had a headlock. He would try to move again. I put pressure on it. He had even admitted- Mr. Lopez, doesn't this basically boil down to the use of the term strangle? Yes, it does. Mr. Ware had talked about having choked Mr. Phillips in his direct examination testimony, had he not? Yes. On cross-examination, however, the state asks, did you strangle him? And his response was no. Isn't that what this basically boils down to, the use of that term? The use of that term, yes. And part of the confusion stems from how the strangulation term is defined in the criminal code as opposed to how it's ordinarily used. And it's saying that Ware admitted or denied strangling Phillips isn't borne out by any fair reading of his testimony. What he's trying to say is that he wasn't trying to, as it's ordinarily known, throttle or fatally obstruct the breathing to severely choke someone. That's not what Ware was trying to do. He wasn't trying to- Had he essentially admitted all of the elements of the offense during his direct examination? Yes, he had, certainly. Having done that, what would be the effect of the cross-examination? Doesn't that simply go to weight or credibility? I think so, it goes to the weight or credibility. I mean, ultimately, a jury properly instructed on self-defense would have to was done in self-defense. And Ware was trying to make clear in his cross-examination that he wasn't trying to hurt, he wasn't trying to strangle Phillips. He was trying to get him to stop biting. And a fair reading of that testimony, although he does say, I wasn't trying to strangle him. A fair reading of his testimony doesn't negate what he had explained elsewhere on direct examination earlier in the cross, that he had a headlock and repeatedly put pressure on his neck and choked him at least briefly for a second or two. That's strangulation under Illinois' broad definition in the criminal code. Ware was never confronted with that definition. That might have helped clarify things if he were confronted with the definition and said, did you strangle in this way? But in the absence of that, I don't think you can say that he denied committing the offense. You claim in your brief, quote, a defendant cannot raise the affirmative defense to an act that he entirely denies committing, end quote. Is that statement really anywhere in any of the cases that you've cited? I don't know that that particular phrase, but certainly looking at the case law as a whole, where a defendant has denied using any force against the victim at all. In Diaz, for example, the defendant says that he threw something at the victim but missed, so he's denying using force. In Lewis, the witnesses testified that someone else, not the defendant, shot the victim. So he's entirely denying the use of force. His own use of force under those circumstances. I think the one key case to look at here is Everett, where the Supreme Court made clear that a defendant can argue that he accidentally killed the victim and still claims self-defense. Because he's there, at least broadly, admitting to using force against the victim. If you look at Lewis, Lewis talks, I think, quite nicely about this line of cases. And essentially says that, where there's no question regarding the defendant's use of force, he's entitled to the self-defense instruction if the facts support it. And that really had been the entire issue throughout the case. I mean, that was it, self-defense. Yeah, exactly, that was it from the get-go. The defense counsel said in opening, the issue here is not what happened, but the why. The jury had asked about self-defense, point blank, does self-defense alleviate the burden? The jury understood that self-defense was the issue here, even without being specifically instructed on it. So, indeed, it was the issue. Going back to the issue of strangulation, I think it's telling that, in its brief, the state doesn't really respond to the statutory definition of strangulation. It doesn't apply that definition to Ware's testimony as a whole. The state says simply that Ware was the aggressor here, but that's not borne out by the facts. I mean, even the trial court said that Phillips had it coming. Phillips himself admits that he's the one who took the toilet brush and drank the water. He tried to smack Ware in the face with it, which precipitated the fight. The state also says that the evidence of strangulation here is overwhelming. And my response to that is, well, yeah, that's kind of the point, that it's kind of absurd to say that what went on here doesn't meet the broad statutory definition of strangulation. Ware's testimony, Phillips' testimony, videotape of the incident, I don't think it's, no, I think it is overwhelming, and I think that that's why Ware was entitled to the self-defense instruction. Did you want to, counsel, did you want to address the forfeiture issue? Sure. Counsel did not preserve this issue in a close trial motion, so we've argued that this court can review the issue under either prong of the plain error test or as a matter of ineffective assistance of counsel. With respect to plain error, the evidence here was closely balanced. Even when talking about the appropriateness of the instruction, the trial court says this is a close call, this is a close one. At sentencing, the court admits there's a strong self-defense component here, says that Phillips probably had it coming, so the trial court even acknowledges the closeness of the evidence. This is kind of the quintessential closely balanced case because it boils down to a credibility contest between Ware's description of the fight and Phillips' description of the fight. And once again, the jury had asked about self-defense point blank, which suggests they were considering this. And we've also asked this court to consider the second, the other prong of plain error, that it denied him a fair trial and that it was a matter of ineffective assistance of counsel where counsel had asked for the instruction and for, you know, reasons I'm not certain, turned around and told the court that he was not aware of any errors that would sustain a new trial, even though the lack of the instruction really gutted the entire defense theory. So that would be ineffective assistance of counsel. And if this court has no further questions, I would preserve my time for rebuttal. Thank you. Thank you. Mr. Manchin. Good morning, your honors. As it pleases the court, in this case, the trial court did not abuse its discretion in refusing to instruct on self-defense. The defendant's claim that the statutory definition of strangulation is broader than a normal definition, I think is an exaggeration to say the least. The defendant finds the most restrictive- Mr. Manchin, why? The defendant finds the most, he finds the most restrictive definition of strangulation you can possibly think of. Choking someone to death and says the statute is broader than somebody choking to death. That's like saying it's illegal to steal a car and then find a definition of a car that says it's a Model T Ford. So the statute has to be broader than that definition. Well, he used the definition that's in the statute. Yes, but he's also saying that the trial court did not use that definition and I don't believe that that is in any way worn out by the trial. Of course, discussion or decision, there was never any discussion below that strangulation meant choking to death versus just pressure around the neck. The defendant's testimony was- I usually agree then that the state didn't in any way define the term of strangulation when it asked the defendant point blank, did you strangle him? And he said, no, that's the extent of it. Well, no, that was not the extent of it. The defendant testified on cross-examination, he did not put his arm around Phillip's neck. He testified that he did not strangle him, that he never impeded Phillip's airway or breathing, and that Phillips could breathe fine at all times. That's- Having previously said I choked him, yes, and on cross-examination, having said that he choked him probably for a second or two, and that his purpose was to show him that if he kept fighting, I could choke him out. He said all that too, didn't he? Well, I believe that his testimony that I kind of put pressure on him, not enough for a instruction, it is more than just a mere reference to self-defense. And there's a further problem with the self-defense. The defendant cannot be the aggressor. Okay, and you mentioned that in your brief, you talk about mutual combat. Didn't the victim acknowledge having started the fight? No. He didn't. He didn't say that he took the brush from him and swung at him. I'm saying that the fight started when the defendant came up to Phillips and said, put the- Well, I don't really care what you think the fight started, I'm talking about what the victim said the fight started. Victim said he started the fight. Well, he's reacting to the defendant's actions. He said, I took the brush from him and tried to hit him with it. Well, let's change the scenario that it's not a brush, but a baseball bat the defendant has in his hands. Why don't we stick with the facts of the case, but let's back up then. The court itself said essentially the same thing at sentencing. Didn't the court indicate that, yeah, in fact, I kind of agree with you. He had it coming. I think this is a situation where both the defendant and Phillips were looking for a fight and both the defendant started the fight by coming up. The defendant had to pick up the brush, walk clear across the cell front, come up to Phillips and shove the brush in Phillips' face. Okay, let's just go by the judge's words at sentencing. I quote, I agree with you, Mr. Ware, that the extent that contact was made to you, that could be a crime. I absolutely agree with that. And to the extent that you were apprehensive, reasonably apprehensive of being hit again, or having some offensive contact again, you had the right to defend yourself. You did that. And that, of course, would merit a self-defense instruction. But then he says, because he denied the strangulation, he couldn't get it. Isn't that what the court said? The trial court's discussion when denying the instruction, that's page 248, 249. Now I'm talking about the sentencing. At the sentencing, didn't he say exactly what I've just quoted? I do not recall the language of the sentencing hearing. I do recall, because I copied, it was the trial court's language when denying the instruction. And his language was, the defendant was very clear that he did not choke him. And it seems to me that on the self-defense argument, the defendant is not entitled to say, he didn't do it, ladies and gentlemen, he didn't do it. But if you find that he did it, he was justified in that use of force he didn't do. Mr. Manchin, let me interrupt for a moment. Isn't, let's step back. Isn't the issue that the one element, the aggressor element is in dispute? That's the issue. We've got two different theories as to how this fight progressed. But the fact that it's in dispute, doesn't that lend us to the case law and Everett and Lewis were talking about very slight, tenuous, sort of aggressive, aggressor issues, meaning all the elements, if they're present, you get the instruction of self-defense. But you also- That question, I'm sorry, has a bit of a diatribe. The question is, isn't it in dispute as to who was the aggressor? And if so, shouldn't the instruction then be given if it's the final element proved up? Well, that was not the final element. You also, the defendant is saying that the Phillips is aggressor because he reacted to the defendant's initial use of force. When the defendant approached Phillips with the brush, he was in fact committing an assault at that time because he's putting Phillips in reasonable apprehension of being of a battery. That's one theory. But the standard of review for a trial court's decision on giving an instruction or refuting instruction is abusive discretion. Was the trial court's decision so unreasonable, arbitrary, or facetable that no reasonable person would agree with it? And I think that under that standard, the trial court's decision was correct here. Under that scenario, I think you've almost got to take your best case elements of strangulation and let us know what elements aren't there. Well, the requirements for self-defense is that the harm was intimate. The defendant was not the aggressor. Unlawful force threatened against the defendant. If the victim is reacting to the defendant, his use of force is not unlawful. The defendant's belief in the amount of kind of force was necessary. You have the defendant sitting on top of Phillips for what the tape shows to be five minutes. Phillips is not moving in the least, not a single movement. Yet for that five minutes, the defendant is on top of him with his arm around his throat. So the reasonable belief of necessity is not there. The video shows that the defendant knocked Phillips to the floor, got back up, and then went back on top of him. So this whole idea that the defendant had to strangle Phillips to protect himself from Phillips is a farce. Okay, I'm confused because did the state argue any of this? It seems to me the state's argument was he didn't deny, he denied strangling, therefore he doesn't get the self-defense instruction. That's correct. But on appeal, we're not limited to the arguments below, but can argue anything that is of record that would support the trial court's decision below. Well, I understand that, but I'm just asking, none of this was raised. So what you're saying is, this is your argument now, not the argument that was before the trial court. The argument before the trial court was basically that having denied choking or blocking or cutting off the victim's breathing at all, the defendant simply cannot claim self-defense as to that strangulation. The trial court did, the prosecutor nor the trial court discussed initial aggressor or any of that. That wasn't really even a question. That was not raised, that's correct. Yeah, because everybody was in agreement that the victim started the fight, right? Well, either that or they were in agreement that both of them went at each other immediately with no little provocation on either side. So this is a issue of mutual combat and the case law says, in a case of mutual combat where you enter into a confrontation or a fight on equal terms, you simply cannot claim self-defense. The defendant has used his provocation of the defendant to say that I was provoked into protecting myself and then I never strangled him, I never choked him, I never cut off his air, but I'm still entitled to self-defense because I sat on top of him for five minutes when he's laying there without moving. And I submitted under that testimony, the trial court was correct in his determination. Did the court indicate that the sole reason it was refusing the use of the self-defense instruction was because the defendant denied strangling the victim, period? Both pre-trial and in response to the defendant's post-trial motion claiming error in the instruction, the trial court did specifically state that- Post-trial motion. The defendant filed a post-trial motion. Right. Which the trial court specifically addressed and I'm trying to find where on the record that was. Because his lawyer didn't file any. No, it's at page 521 and 522 of the record where the trial court discusses the affirmative defense. And I quote, fundamental requirement to give that instruction, you can't say I didn't do that. So if you say I did not strangle him, I did not choke him, you can't assert self-defense. But this, you know, Mr. Manchin, this is sort of an I gotcha argument, right? So we've got all this testimony of force and who's the aggressor and fighting and choking. But on cross you say not strangling, so you're home free. Well, it was more than just not strangulation. It was his breathing was never impaired, period. He didn't, it was not, defendant did not limit his testimony to, I did not strangle him. His testimony was, I did not choke him. I did not, his breathing was not impaired in any way. I did not choke him. I did not put my arm around his neck. After having said all those things occurred on direct. Well, his testimony on direct was less than clear as to exactly what he was doing. He said, I would apply pressure in a headlock, but he never did say that he- Every time he struggled, I would make sure that he could tell that I could choke him out. See, the argument asked the court to accept the defendant's definition of the charge defense. Well, the defendant's definition, which is the same definition of the statute, is the statute defines it as cutting off the airway. The defendant's testimony is the victim's airway was never obstructed, period. The defendant is trying to say, I claim self-defense in this part of my testimony. He's doing exactly what the trial court says you can't do. I claim I didn't do it, but if I did, I did it in self-defense. That's exactly what the defendant's trying to do in this case. But the ultimate call is a trial judgment is the referee and makes that call. Yeah, and the trial court judge's determination was based upon your testimony that you did not choke him. You're not entitled to the instruction. And I think given the evidence- Because he said he didn't strangle him. No, on page 249, I believe it is the record, the trial court says the defendant was very clear that he did not choke him. The trial court did not- That's at the sentencing, isn't it? No, that is at the, it is page 249 when the trial court was discussing whether or not to give the instruction. But isn't the trial court at that point, I know with what you're referring to, he's paraphrasing the prior testimony of the defendant. Obviously, he was paraphrasing it, but the trial court did not say, you're not entitled to an instruction because you said you did not strangle him using any kind of just strictly the word strangle. He said you didn't choke him. But he also says I did choke him, and he also says I put my arm around his neck and I applied pressure because he was trying to get away from me. Yeah, again, referring to the trial court's ruling was because he admits having his arm around his neck, but he is very adamant that he did not strangle him. He's adamant that other brief show of force, he did not choke him. He showed that a brief show of force to show what he was capable of doing, but the defendant was very clear he did not choke him. That's the trial court's discussion at the time the instruction was requested. And I think that's a very fair summary of the defense. Even if the trial court was in error in refusing to instruct the jury on self-defense, I think that the error would be harmless beyond a reasonable doubt. The video showed that the defendant was on top of the victim for at least five minutes with his arm around the neck and the victim was not moving at that time. How could it be harmless beyond a reasonable doubt when the only significant question of the jurors was does self-defense apply in this case? Well, it would be harmless because no reasonable jury could find that holding a man- It was their question. They obviously had a problem with it. They only had two questions, one about provocation and the other was does self-defense apply in this situation? But I think given the evidence that the absence of a instruction would be harmless because of the very nature of the evidence, you have a mutual- Okay, wait a minute. I'm having a problem because it seems like you're ignoring reality. You're talking in generalities. I'm asking you the jury itself, the finders of fact in this case said you would like to know whether self-defense applies. Oh, excuse me. Not in general, not theoretically, this jury wanted to know whether self-defense applies. How more specific can you get in indicating that that was clearly their issue? It may be their issue, but under the law and the facts here that even with a proper instruction on self-defense, they could not have reached a different result because you have the defendant strangling an immobile man. There was no need for force at the point of time. Part of the self-defense requirement is that the necessity or proportionality of the threat to the reaction. What about the fact that the victim indicates he continued to struggle? He was trying to win the fight when he realized that he couldn't. He was trying to protect himself, but he says he continued to struggle. Well, he continued to struggle from the tape. The video tape shows that the fight stopped, started at about seven... Let me see. I have my notes here, but I can't read them. Starts at 6.53 or so. He stops moving at 6.56, and then he moves again. So he struggles for three minutes, but the defendant continues to stop struggling, and the defendant continues holding him around the neck for over five minutes, and then... Total, right? You mean five minutes after he stopped struggling? Five minutes after he stopped struggling. So it was eight minutes total from your perspective. From the perspective of the video tape, the fight starts about 6.53 and about 6.54. He fills up... We're going to ignore the testimony of the victim himself, both at trial and later as a witness at the sentencing hearing, and just go by what we see on the video. Well, the video and Phillip's testimony is consistent. The answer to that question is yes. It's consistent. He shows that he was struggling for the first minute and a half to two minutes. Well, a moment ago, you said it was three minutes. Well, I misread my notes here. I think we understand your position, Mr. Manchin. You've run out of time, and we'll hear rebuttal. All right. Thank you, Your Honors. Thank you, Your Honors. I have just, I think, three brief points to make. The first, to the extent that there's a question about who the aggressor was or whether Ware's response was disproportionate, those are all questions that are suited for a properly instructed jury on the matter of self-defense. That's not something that this court needs to decide. That's not something that was so clear from the record that Ware should have been deprived of a self-defense instruction. To the extent that Ware confronted him with a toilet brush, Phillips didn't describe any sort of threatening words or assaulting terms that would clearly make him the aggressor that would make self-defense inappropriate in this case. As a factual matter, Ware's testimony was that he never stopped Phillips from breathing. Repeatedly, Ware says on page 236, on page 237 of the record, Ware says, I never stopped him from breathing. He never denies that he impeded, Ware never uses the word impede, but he never denies that he has impeded or obstructed the breathing. He admits that he puts pressure on the neck. He admits that he choked the victim. And I think that the purpose of this broad definition of strangulation written by the legislature is to sweep in situations like this. Strangulation, as it's normally thought of, as you see in movies, for example, somebody throttling someone around the neck, but a headlock or a chokehold can also obstruct someone's breathing. And in situations like that, that would cover the facts in this case. And I think that's all that I have, unless this court has any further questions. Do we have any further questions, gentlemen? And I would ask that this court reverse Mr. Ware's conviction and remand for a new trial. Thank you, counsel. We'll take this matter on advisement. Stand in recess.